IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


FRALL DEVELOPERS, INC.            :
                                        :
    v.                                     :      CIVIL NO. CCB-07-2731
                                        :
BOARD OF COUNTY COMMISSIONERS    :
FOR FREDERICK COUNTY              ...o0o...

## MEMORANDUM

Now pending before the court is the plaintiff's motion for discovery and the defendant's motion for summary judgment. The plaintiff, Frall Developers, Inc. ("Frall"), has sued the Board of County Commissioners for Frederick County ("Board") alleging that the Board violated its substantive due process rights by denying Frall a fair and reasonable review of its zoning request.[1] The issues have been fully briefed and no hearing is necessary. For the following reasons, the plaintiff's motion will be denied and the defendant's motion will be granted.

## BACKGROUND

On August 30, 2007, the Board denied Frall's request to change its water and sewer classification to a designation required for development of a residential subdivision. Frall alleges that, as a result of the denial, it could not satisfy one of the conditions precedent set forth in a Letter of Understanding ("LOU") executed between plaintiff and the Frederick County Planning

---

[1] Frall also seeks a declaratory judgment (Count I) and injunctive relief (Count VII). Frall's other causes of action were dismissed by this court pursuant to defendant's motion. *See Frall v. Board of County Commr's for Frederick County*, CCB-07-2731 (D. Md. September 30, 2008). A full factual background of this litigation can be found in that memorandum opinion, which is incorporated herein by reference.

Commission ("Planning Commission") and, thus, was unable to develop its property. Frall and the Planning Commission executed the LOU on March 15, 2006 for the purpose of ending state litigation over Frall's plans to develop a residential subdivision on a parcel of land called Supply to Barren.

Pursuant to the terms of the LOU, the Planning Commission agreed to approve Frall's preliminary plat for twenty-four lots, including a four-lot minor subdivision, subject to certain conditions. (*See* Board Certified Administrative Record ("Record") at 130.) One such condition on approving the four-lot subdivision was, "[p]rior to recordation, obtain a sewer classification to the S-3 (Dev.) Classification[.]" (*See id.* at 131.) The LOU provided further that "Frall will not convey, sell, transfer or assign any of the remaining twenty lots until all twenty lots meet the APFO [Adequate Public Facilities Ordinance, Frederick County Code §§ 1-20-1 *et seq.*] approval for schools." (*Id.* at 130.) The four-lot minor subdivision would not be required to comply with the APFO because the Adequate Public Facilities chapter of the Frederick County ("County") Code exempts minor residential subdivisions, defined as five or fewer lots. *See* Fred. Co. Code §§ 1-20-5(B) & 1-20-7(A).[2]

On September 28, 2004, Frall sought reclassification of the entire property from S-5/W-5 to S-3/W-3.[3] The Planning Commission heard the application and approved a reclassification to

---

[2]Frall proposed the terms of the settlement on January 14, 2004, and the Planning Commission granted Frall conditional preliminary plat approval at a public meeting on August 18, 2004. A year later, on August 26, 2005, the Planning Commission notified the plaintiff of final preliminary plat approval, enclosing documents indicating a final approval date for the preliminary plat of August 16, 2005. Almost seven more months passed before Frall and the Planning Commission formally executed the LOU.

[3]A designation of S-5/W-5 indicates that between seven and twenty years will pass prior to connection of the sewer and water lines; a designation of S-4/W-4 indicates a connection time

S-4/W-4 in December 2004. The Board also approved the reclassification to S-4/W-4 in February 2005. Frall submitted its next request for reclassification from S-4/W-4 to S-3/W-3 on February 5, 2007. On May 16, 2007, the Planning Commission voted to approve the reclassification to S-3/W-3. On July 17, 2007, however, the Board, by a vote of 3-2, directed the Deputy County Attorney to prepare a resolution denying approval. On August 30, 2007, the Board denied Frall's request for reconsideration by a vote of 5-0 and approved Resolution 07-43 denying the request for reclassification because the Board concluded that three of the seven requirements for S-3/W-3 reclassification had not been met.

First, the Board found that Frall had not furnished a study of the components of the existing water and sewer wastewater system "in conjunction with the Adequate Public Facilities Ordinance [("APFO")] as required." (*Id.* at 8.) Second, the Board found that a preliminary subdivision plan had not been approved by the Planning Commission because "the proposed subdivision did *not* receive APFO approval for schools and water and sewer, both of which are statutory prerequisites for preliminary subdivision plan approval." (*Id.* at 9.) Finally, the Board found that the documents and testimony had failed to establish that the applicant had obtained "approved improvement plans and an approved cost proposal for all improvements required to bring the water and sewer service to the site." (*Id.*)

Further, the County Attorney informed Frall by letter on August 24, 2007 that Frall's Supply to Barren preliminary plat was no longer valid. According to the County Attorney, the preliminary plat, which was conditionally approved on August 18, 2004 by the Planning

---

between four and six years; and a classification of S-3/W-3 indicates that public facilities will be complete and operational within three years. (*See* Record at 85-87.)

Commission, expired after three years.[4] Frall filed suit in this court on October 8, 2007, contending that the Board acted arbitrarily and capriciously in denying its reclassification request. Of particular relevance, Frall claims that the Board's second justification is meritless because the Planning Commission *did* grant the requisite preliminary plat approval, and the Board had no authority to conclude otherwise.

## ANALYSIS

### A. Abstention

The Board first contends that the court should abstain from deciding the merits of this case due to the intimately local nature of the land use question at issue. While the court recognizes that resolving routine land-use disputes "is simply not the business of the federal courts[,]" *Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 67 (4th Cir. 1992), the court is also cognizant that the Constitution protects against arbitrary and unreasoned action in zoning practices. *See Scott v. Greenville County*, 716 F.2d 1409, 1419-21 (4th Cir. 1983). Here, Frall alleges that the Board's arbitrary and capricious action in denying the water and sewer reclassification request deprived Frall of its constitutionally protected property interest in the LOU. Moreover, as the following analysis demonstrates, the case does not require the resolution of difficult state law questions nor does it threaten to "disrupt the efficacy of an important and coherent state policy[,]" thus *Burford* abstention is not required. *See Neufeld v. City of Baltimore*, 964 F.2d 347, 350-51 (4th Cir. 1992); *cf. MLC Auto., LLC v. Town of Southern Pines*,

---

[4] County Code § 1-16-71(p) (2000), in effect when the preliminary plat was approved, provides that "[p]reliminary plat approval shall become null and void at the end of three (3) years from the date of approval." (Compl. Ex. 38.)

532 F.3d 269, 283-84 (4th Cir. 2008) (finding *Burford* abstention appropriate where plaintiff's vested rights claim under North Carolina law was unclear and deciding the issue would impact the municipality's land use policy). Accordingly, the court will not abstain from considering the merits of plaintiff's claim.

**B. Frall's Motion for Discovery**

Pursuant to Federal Rule of Civil Procedure 26(b), Frall has filed a motion for discovery to support its claim that the Board denied it substantive due process. The Board argues both in its opposition and summary judgment memoranda that judicial review of administrative agency action is limited to the administrative record and, therefore, no additional discovery is required. Frall contends that, more than merely an administrative appeal, its claim is that the Board deprived Frall of a constitutionally protected property interest in the LOU by denying it a reasonable review of its reclassification request and, consequently, denying Frall a fair opportunity to develop its property.

Frall also contends that because the Board's action was quasi-legislative, rather than quasi-judicial in nature, the court need not limit its review to the administrative record. The transcript of the Board's hearing suggests that the resistance to approving the reclassification request stemmed primarily from policy considerations, namely, setting a precedent for recording a large plat that has not met full APFO requirements and involves spinning off a minor subdivision:

> Chairman Gardner: I personally think that it ... sets a very bad precedent. It was inappropriate for the Planning Commission to allow [Frall] to record these lots without passing APFO. It has never happened before. [Record at 38-39.]
> ...

5

>    [Commissioner] Gray: But it was a twenty-four (24) lot subdivision. To count the first four (4) lots as a minor subdivision, I've never heard of. . . . Then everybody could take the first four (4) off. Wouldn't that be fun? [*Id.* at 49, 57.]
>    ...
>    [Commissioner] Jenkins: I'm more concerned about the precedent setting here and doing what Commissioner Gray is talking about. ... [S]pinning off [a] minor subdivision out of – out of a larger tract. [*Id.* at 60.]

Moreover, the transcript is devoid of comments regarding the "unique characteristics that inhere" to the Supply to Barren *property* or the parcel's potential impacts on surrounding properties, schools, water supply, and the like. *See Md. Overpak Corp. v. Mayor & City Council of Baltimore*, 909 A.2d 235, 248-49 (Md. 2006). Rather, the discussion revolved primarily around the *process* of obtaining approval: the steps a developer must take to satisfy the reclassification requirements and whether making exceptions established a "bad precedent." This distinction suggests the Board was concerned more with generalized policy considerations than the specific characteristics of the parcel at issue and that the determination was akin to a quasi-legislative action. *See Bethel World Outreach Church v. Montgomery County*, 967 A.2d 232, 244-245 (Md. App. 2009).

The nature of Frall's claim and the Board's action notwithstanding, additional discovery is not necessarily warranted. As discussed below, the administrative record supports the Board's claim that it relied on legitimate grounds in denying the reclassification. Frall has failed to identify how additional discovery would salvage its claim that the Board, in denying the request, acted arbitrarily and capriciously.[5] Accordingly, the plaintiff's motion will be denied.[6]

---

[5]In addition to determining whether the Board's proffered justifications for denying the reclassification were invalid – an analysis that can be conducted solely from the administrative record – Frall asserts that discovery is required to investigate the County's treatment of similarly-situated applicants and whether the County applied the pertinent regulations differently to Frall's application. (*See* Disc. Mem. at 6; Summ. J. Opp. Attach. 3, Fed. R. Civ. P. 56(f) Decl.

**C. Board's Motion for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

---

of Leslie A. Powell ("Powell Declaration"), ¶¶ 6-7.) To support this assertion, the Powell Declaration points to one so-called similarly-situated applicant in whose case "the parties provided that a note be prominently placed on the plat indicating that no building permits could be issued until APFO criteria were met." (Powell Decl. ¶ 7.) It appears, however, that the referenced subdivision plan had met APFO criteria when it was originally approved by the Planning Commission. Due to delays in recordation through no fault of the developer, the APFO compliance had expired by the time the final lots of the subdivision were to be recorded. Litigation ensued, and the parties entered a settlement whereby the developer was permitted to record the remaining lots pursuant to the original APFO approval but had to meet certain conditions prior to the issuance of building permits. (*See id.* Ex. A.) In Frall's case, however, the LOU indicates that full APFO compliance was not required by the Planning Commission when the preliminary plat was approved. Thus, the only cited example is readily distinguishable on the facts and was approved in 2002, five years prior to the denial of Supply to Barren's reclassification. Frall simply has failed to demonstrate a need for discovery regarding irregular application of the zoning regulation at issue. *See, e.g.*, *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D. Md. 2002) (noting that a plaintiff is not entitled to a "fishing expedition" in the context of a Rule 56(f) request for additional discovery).

[6]The court also will deny as moot the Board's motion to file a sur-reply.

7

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

*i. Expiration of the Preliminary Plat*

Both parties seek declarations regarding when Frall's preliminary plat was approved for purposes of County Code § 1-16-71(p) (2000), which, as noted above, provides that "[p]reliminary plat approval shall become null and void at the end of three (3) years from the date of approval." The Board contends that the three-year period began to run when the Planning Commission conditionally approved Frall's preliminary plat in August 2004 and therefore expired in August 2007. The Board further suggests that the Maryland Department of the Environment would not have been able to process and approve Frall's request, as is required by state law, until after August 2007. Accordingly, the Board maintains that the preliminary plat would have expired and Frall would have been deprived of the benefits of the LOU *even if* the Board had approved Frall's request, rendering moot Frall's substantive due process claim.

Frall argues that the three-year period did not begin to run until the Planning Commission

granted final preliminary plat approval in August 2005. In the alternative, Frall suggests that the County's delays in finalizing the LOU and then in processing Frall's reclassification application bar the County from asserting that the plat expired. These arguments raise questions of local statutory interpretation that need not be decided; even assuming Frall's interpretation is correct, as discussed below, the County is entitled to summary judgment on the remaining claims.

*ii. Substantive Due Process*

The Fourth Circuit recently enumerated the elements of a substantive due process claim: a plaintiff "must 'demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency.' " *MLC Auto.*, 232 F.3d at 281 (quoting *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir.1995) (emphasis in original)). In the context of zoning involving property, "it must be clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.' " *Id.* (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187-88 (1928) (internal quotation marks omitted)). Facts that courts may consider include whether: "(1) the zoning decision is tainted with fundamental procedural irregularity; (2) the action is targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice." *Id.* (citing *A Helping Hand, L.L.C. v. Baltimore County*, 515 F.3d 356, 373 n. 10 (4th Cir.2008)).

For purposes of this motion, the court will assume without deciding that the Board had no

9

discretion to deny a properly-made water and sewer designation reclassification request and that Frall had a constitutionally protected property interest in the LOU. Turning to the Board's action, Frall contends that the reasons the Board gave for denying its reclassification request are illegitimate. In light of the mandatory classification criteria, however, if even one of the Board's justifications is reasonable, then its denial was not an arbitrary exercise of power and Frall's substantive due process claim fails.

Because the transcript indicates that the Board's primary concern was the legitimacy of the Planning Commission's preliminary approval of Frall's subdivision plan, the court will begin by examining that justification for denial. It is undisputed that to be eligible for an S-3/W-3 designation, the preliminary plan must be approved by the Planning Commission. (*See* Record at 87.) To obtain Planning Commission approval, an applicant must meet certain requirements: "Subdivision plats or site plans that do not meet the requirements for adequate public facilities in Articles III-VI herein [roads, water, sewer, and schools, respectively] *shall* not be granted preliminary subdivision or site plan approval by the Planning Commission." Fred. Co. Code § 1-20-8(B) (emphasis added).[7] Here, the Planning Commission failed to require full APFO compliance before approving Frall's preliminary subdivision plan.[8]

As discussed above, several commissioners – including at least one who voted against the denial – expressed legitimate public welfare concerns about the Planning Commission's

---

[7]The County Code directs that the word "shall" is "always mandatory and not discretionary." Fred. Co. Code § 1-20-5(A)(2).

[8]The March 2006 LOU acknowledges that the Planning Commission denied Frall's 1999 twenty-four lot preliminary plan because the three-year APFO test for schools could not be met. (*See* Record at 129.)

approval in this case because it set a precedent for allowing developers to short circuit the County's zoning requirements. Frall argues, to the contrary, that the Board had no discretion to challenge the Planning Commission's approval. The court disagrees.

As the County's decision-making authority for water and sewer amendment requests (*see* Record at 84), the Board is tasked with determining whether a particular application has met all of the classification criteria. Faced with evidence that the Planning Commission prematurely approved the subdivision plan, the majority of commissioners believed that Frall failed to meet that criterion. (*See, e.g.*, Record at 39 ("Chairman Gardner: . . . [P]art of the reason why requirement for a "3" is that they have preliminary subdivision plan . . . is that they will have passed APFO. . . . Everything beyond [the 4 lots], in my opinion, has not passed the APFO.").) While the County Code vests the Planning Commission with authority to make the "final determination of adequacy" of a subdivision plan, that determination is made in the context of the Planning Commission's authority to administer the APFO. *See* Fred. Co. Code § 1-20-20. As noted above, the APFO mandates compliance with roads, water, sewer, and schools requirements prior to Planning Commission approval. *See id.* § 1-20-8(B). Because the Planning Commission did not require full compliance with the APFO, the Board acted reasonably in determining that the Planning Commission's approval was improperly granted, particularly considering the mandatory nature of the APFO requirements. Accordingly, the Board was within the "outer limits" of its government power in denying the S-3/W-3 classification based on Frall's failure to obtain the requisite Planning Commission approval.[9]

---

[9]Frall suggests that it was unprecedented for the Board to "refuse[] to acknowledge a preliminary plan approved by the [Planning Commission] as satisfying the requisite for reclassification." (Pl.s' Opp. at 47.)  The hearing transcript demonstrates, however, that several

Frall's other arguments also fail to raise a genuine issue of arbitrariness. First, as the court suggested in the September 2008 memorandum opinion, Frall's reliance on the LOU is not relevant to the Board's decision making authority. The fact that a County attorney helped negotiate the LOU did not bind the Board, nor did the Board's prior knowledge of the LOU gained from the 2005 reclassification to S-4/W-4.[10] Similarly unpersuasive is Frall's suggestion that the Board's failure to address this issue when it approved Supply to Barren's S-4/W-4 reclassification is evidence of arbitrariness. The S-4/W-4 classification does not require subdivision plan approval by the Planning Commission. (*See* Record at 86.) Thus, it would have been unreasonable for the Board to deny an S-4/W-4 classification based on concerns regarding the legitimacy of the Planning Commission's approval.[11]

In light of the court's conclusion that the Board rested its denial on at least one legitimate ground, Frall has failed to raise a genuine issue for trial that the Board's conduct was arbitrary

---

of the Board members – including Commissioner Hagen who voted against denying the reclassification – considered the Planning Commission's approval of a subdivision plan prior to APFO compliance to be unusual. (*See, e.g.*, Record at 46 (Chairman Gardner), 49 (Commissioner Gray), 53 (Commissioner Hagen).)

[10]It is nonetheless understandable that Frall may have assumed the Board would honor the LOU. It does not appear that the process was well-handled by the County authorities; under the circumstances, however, Frall has not satisfied the demanding standard for establishing a constitutional violation.

[11]Moreover, Commissioner Thompson voted against approving the S-4/W-4 reclassification (*see* Pl.'s Opp. Ex. 4 at 11), consistent with his vote on the S-3/W-3 reclassification (*see* Record at 64), and Commissioner Grey was not yet on the Board. Commissioner Gardner's statements at the S-4/W-4 reclassification hearing suggest she was initially confused as to what the Planning Commission actually had approved. (*See* Pl.'s Opp. Ex. 4 at 6 ("It's very confusing because I understood that the Planning Commission only wanted to look at the layout of all 24 lots to approve the 4.").) While her later comments indicate she understood that the Planning Commission had approved all 24 lots (*see id.* at 9), her failure to express concern about the legitimacy of that approval suggests at most that she changed her opinion on the matter.

and capricious. Accordingly, Frall's substantive due process claim cannot survive summary judgment, and Frall is not entitled to injunctive relief.[12]

## **CONCLUSION**

For the foregoing reasons, the court will deny the plaintiff's motion for discovery and will grant the defendant's motion for summary judgment on all of Frall's remaining counts. All other pending motions will be denied as moot. A separate order follows.

  August 12, 2009  
Date

                  /s/                  
Catherine C. Blake  
United States District Judge

---

[12]The plaintiff has moved to submit an additional exhibit, claiming it supports Frall's assertion that Commissioner Thompson harbored ill will toward Frall and "was determined to vote against any proposal involving Frall[.]" (Pl.'s Motion at 2.) The exhibit is an unofficial transcript of a Board hearing in which Commissioner Thompson allegedly voted against another developer's request because a principal of that developer, James Frey, is also a principal of Frall. This vote occurred on March 6, 2008, after the decision complained of in this case. In light of the court's conclusion that the commissioners relied on at least one legitimate ground in denying Frall's reclassification request and the lack of any evidence that the denial at issue in this case was based on animosity or was of a punitive nature, the court has no reason to look to the underlying motivations of the decision makers. *Cf. S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 (4th Cir. 1989) (acknowledging that, with limited exceptions, "judicial inquiry into legislative motive is to be avoided"). Accordingly, the motion will be denied as moot. The court will also deny as moot the defendant's motion to strike certain of plaintiff's exhibits and references to those exhibits.